UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:19-CR-169-KKC

UNITED STATES OF AMERICA            PLAINTIFF

V.          **UNITED STATES'S SENTENCING MEMORANDUM**

ISMAILA S. FAFUNMI            DEFENDANT

\* \* \* \* \*

The United States of America, through counsel, submits its position with respect to the appropriate sentence for Defendant ISMAILA S. FAFUNMI. Neither party raised objections to the Presentence Investigation Report ("PSR"). [PSR at pp. 14.] Accordingly, the United States agrees with the United States Probation Office that the Defendant's Total Offense Level is 25, and that the Defendant's Criminal History Category is I. [PSR at ¶¶ 32, 37.] The Defendant's applicable Guidelines range is thus 57 to 71 months. [*Id*. at ¶ 73.] Pursuant to the factors contained in 18 U.S.C. § 3553(a), and for the reasons set forth below, the United States believes that a sentence at the low-end of the properly adjusted Guidelines range is sufficient but not greater than necessary to achieve relevant sentencing goals.

## Argument

The advisory Sentencing Guidelines range serves as the "starting point and initial benchmark" for the Court's sentencing analysis. *United States v. Bolds*, 511 F.3d 568, 579–

80 (6th Cir. 2007) (citation omitted). Accordingly, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines Range." *United States v. King*, 553 F. App'x 518, 520 (6th Cir. 2014) (citing *Gall v. United States*, 552 U.S. 38, 49 (2007)).

After considering the advisory Guidelines range, the Court must also consider the factors set forth in 18 U.S.C. § 3553(a). These include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, and the need to avoid unwarranted sentencing disparities between similarly situated defendants. *See* 18 U.S.C. § 3553(a)(1)-(3), (6). When fashioning the appropriate sentence, the Court endeavors to find a punishment that is "sufficient, but not greater than necessary" to address these considerations. 18 U.S.C. § 3553(a).

### A. The Applicable Advisory Guidelines Range

The Court's sentencing analysis begins with the Guidelines, because the Guidelines "reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). The Guidelines therefore "seek to embody the § 3553(a) considerations, both in principal and in practice." *United States v. Haj-Hamed*, 549 F.3d 1020, 1027 (6th Cir. 2008) (*quoting Rita*, 552 U.S. at 350).

The PSR correctly calculated the Defendant's Guidelines offense level. The PSR

provides for a base offense level is six (6), because the Defendant participated in the underlying fraud. [PSR at ¶ 23.] The base offense level is increased by twelve (12) levels, because the loss was more than $250,000, two (2) levels because the offense involved ten or more victims, and two (2) additional levels because a substantial part of the scheme was committed from outside the United States. [*Id.*] The PSR also assesses a two (2) point increase, because the Defendant was convicted under 18 U.S.C. § 1956, a two (2) point increase as a result of the sophisticated money laundering operation, and a two (2) point leadership enhancement. [*Id.* at ¶¶ 24, 25, 27.] With a three (3) level reduction for acceptance of responsibility, the Defendant's total offense level is 25. [*Id.* at ¶¶ 31, 32]. The resulting Guidelines range is 57 to 71 months' incarceration.

### B. Nature and Circumstances of the Offense

While the PSR and numerous pretrial filings have explained the general nature of the scheme, there are several factors that underscore the sophistication and skill of the conspiracy. This network was comprised of several layers, beginning first with the scammers, who sat behind keyboards in Nigeria, preying on elderly citizens of the United States by impersonating romantic companions eager to make lasting relationships on dating websites. It is evident from the information gleaned from the Defendant's cell phone that he participated in this type of scam, helping to develop convincing dating profiles by providing photographs and other information that could be used to defraud other victims.

The next level is the money launderers. To plausibly request that their victims send money, the scammers needed American addresses and bank accounts. People like

3

Fafunmi, located in the United States, created networks of money launderers, both witting and others duped into believing they were involved in legitimate employment, to receive the victims' funds. From there, the frontline money launderers typically withdrew victim funds in cash and then engaged in a variety of layering techniques: depositing in new bank accounts in other names, wiring the money to other domestic bank accounts through bank wires, wiring the money to foreign-based coconspirators through international money transmitters, and transferring funds to personal bank accounts located abroad. Along the way, funds are remitted to or remained with the various participants, so they can retain their cut of the operation.

To be sure, greed motivated every criminal participant in this scheme. Fafunmi's principal role was as a money launderer. As a result of this sophisticated laundering, the money laundering operation allowed the conspiracy's criminal acts to reach further, exploit more victims, and conceal higher volumes of proceeds. The nature and circumstances of this offense demand a significant custodial sentence.

### C. History and Characteristics of the Defendant

The Defendant comes before the Court as an otherwise law-abiding citizen. He has no criminal history. [PSR at ¶¶ 40-41.] He reported that his basic needs were met, and his childhood was free from abuse or neglect. [*Id*. at ¶ 44.] The Defendant reports a variety of employment spanning most of his adult life. [*Id*. at ¶ 49.] The record lacks any evidence of financial difficulty, drug addiction, or any other reason to explain why the Defendant would commit the crimes he did.

### D. The seriousness of the offense, promote respect for the law, and protect the public

Victim #1 was a Lexington, Kentucky resident, who drained her life savings as a result of the romance scam described so thoroughly in the PSR. In providing records to support her victim impact statement, Victim #1 wrote, "I have trouble even reading all the things I did to try to help someone (I thought). Hard to believe [there] are such crooks that exist and feed off folks to get what they want."

Victim #2 was a Western Kentucky resident, who drained her life savings and now lives in debt due to the grant fraud scam to which she fell victim. She explained that she was defrauded into sending money due to someone impersonating a church friend on Facebook and encouraging her to look into a federal grant. Victim #2, disabled, stated that the perpetrator "hooked her. He had all my money, my house, everything. Then he wanted my discover card numbers and password." She relayed that her perpetrators "took her lifeline under false pretenses," and described the impact as "total devastation: I have no self-esteem." This type of crime not only deprives victims of their savings, but also deprives them of their dignity and trust in humanity.

Fafunmi's crimes reach beyond that of Victim #1 and Victim #2. The Defendant's occupation as a launderer of all types of cyber-enabled frauds targeting United States senior citizens enabled him to victimize more than ten individuals. [R. 39: Plea Agreement at ¶ 5(c).] M.M. was another victim of Fafunmi's conduct, who now has a guardian acting on her behalf due to her mental decline. She lost $70,000 to a cyber-enabled fraud. Her guardian wrote that M.M. "is a very sweet woman who would help anyone in need," and

that she is "currently suffering from dementia and living with ALF." As a result of her victimization, M.M. "will [have] needs . . . in the future that will have to come from government assistance or charity due to the actions of Mr. Fafunmi." Another victim, M.R., described her reaction to her victimization out of more than $10,000 as "heartbroken, sad, and very mad to know we were too trusting and were fooled into this scheme of what we thought would help us and our children with debts."

Exploiting the vulnerabilities and sensitives of our senior citizens is a particularly insidious type of crime that cannot be tolerated. The seriousness of this offense cannot be overstated. A Guidelines sentence will reflect the seriousness of the offense, promote respect for the law, and protect the public.

**E. Deterrence**

As this case makes clear, the extensive reach of the internet makes cybercrime, and the laundering of the proceeds of that crime, much more widespread than traditional fraud schemes. In this case, the defendants' eagerness to target U.S.-based victims combined with their lack of regard or empathy for those victims pose a specific and ongoing threat to the public.

Courts are also permitted to consider general deterrence in fashioning its sentence, which is, indeed, a vital consideration in this case. A Guidelines sentence would adequately deter criminals who falsely believe their conduct as a money launderer, who has taken steps to conceal his connection or understanding of the underlying fraud, will go unchecked. The conspiracy took many steps to hide their criminal activity. The defendants

6

communicated over encrypted messaging services; some hid behind the supposed anonymity of the internet; some, like Fafunmi, hired a network of mules to receive money as initial launderers in an extensive layering operation; and they dealt in cash or with bank accounts under corporate or nominee names. Money launderers like Fafunmi participate in this type of criminal activity, in part, because they believe it is doubtful that they will be caught and brought to justice. In cases where detection and apprehension does occur, the sentence must be commensurate to the increased need for deterrence. A Guidelines sentence will both deter the Defendants in this case as well as those who seek to follow in their footsteps.

### F. Remaining Factors

The United States does not believe there is a need to provide treatment to the Defendant, or to avoid unwarranted sentencing disparities. While the Guidelines focus on national sentencing disparities, a related consideration is relevant to this Court's analysis. This case currently involves four defendants. The Guidelines are the most consistent way to ensure that the sentences for these defendants, with varying levels of participation, are sentenced without unwarranted disparities. The remaining § 3553(a) factors are not relevant to the Court's sentencing analysis.

### I. Conclusion

For the reasons stated above, the United States submits that a sentence of imprisonment at the low end of the properly adjusted Guidelines range is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

Respectfully Submitted,

CARLTON S. SHIER, IV
ACTING UNITED STATES ATTORNEY

By: s/ Kathryn Anderson
Assistant United States Attorney
260 W. Vine Street, Suite 300
Lexington, Kentucky 40507-1612
(859) 685-4885
Kathryn.Anderson@usdoj.gov

## CERTIFICATE OF SERVICE

On August 13, 2021, I electronically filed this document through the ECF system, which will send the notice of electronic filing to counsel of record.

/s/ Kathryn Anderson
Assistant United States Attorney